IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Antrel Jermain Fordham, # 262332,<br>*aka* Antrel Jermaine Fordham,<br><br>      Plaintiff,<br><br> vs.<br><br>N. Fleischmann, *RN*;<br>L. Mauney, *RN, in their individual<br>capacity*,<br><br>      Defendants. | Civil Action No. 2:14-1093-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, is an inmate at the Lieber Correctional Institution of the South Carolina Department of Corrections ("SCDC"). The two defendants are nurses at Lieber. The plaintiff alleges that the defendants violated his constitutional rights by being deliberately indifferent to his serious medical needs, which the defendants deny. The parties have each filed motions for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

## HISTORY OF THIS CASE

By way of background, the plaintiff previously filed a case in this court alleging the deliberate indifference of Nurse Mauney and others regarding his foot pain (Civil Action No. 2:12-974-MGL-BHH), which resulted in summary judgment for the defendants. The judgment was affirmed by the Fourth Circuit Court of Appeals on April 30, 2013. *Fordham v. Moore*, No. 13-6172, 520 F. App'x 192 (4th Cir. April 30, 2013).

The complaint here was filed on March 24, 2014 (doc. 1). The plaintiff alleges that he was shot in the foot in 1998 and that he remains in pain with a severe limp (*id*. at 3). He asked to see a doctor on January 3, 2014, but was told to take Tylenol (*id*.). The plaintiff alleges that he requested to see a doctor again on January 17th and was finally allowed to see a doctor on February 20th, at which time the plaintiff asked for a medical authorization for shoes with extra cushioning and support (*id*.). The plaintiff states that he was later given ibuprofen, but has not received the shoes and has been refused to be seen again at sick call (*id*.). The plaintiff indicates that he has written to SCDC's Medical Director, but someone else answered his request and stated that he had already written about this issue in 2013 (*id*. at 4). The plaintiff alleges that nothing is being done, despite his repeated attempts to get different treatment for his foot (*id*.). In his prayer for relief, the plaintiff seeks the requested shoes and compensatory damages (*id*. at 5).

The defendants filed an answer (doc. 14) on May 20, 2014, denying the allegations and raising various affirmative defenses.

On June 5, 2014, the plaintiff filed a motion for summary judgment (doc. 21). The defendants filed their response in opposition (doc. 24) on June 23rd. The defendants then filed their motion for summary judgment (doc. 31) on July 3rd. The undersigned issued a *Roseboro* order to apprise the plaintiff of summary judgment procedure. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). The plaintiff filed his response (doc. 40) to the motion for summary judgment on August 7th.

In his motion for summary judgment, the plaintiff argues that his ongoing foot pain, coupled with the defendants' purported inadequate treatment, entitles him to summary judgment. Attached to his motion are various exhibits, including the plaintiff's Requests to Staff forms (doc. 21-1); the plaintiff's affidavit (doc. 21-2); and a medical note dated March 20, 2014, indicating that the plaintiff may take Tylenol but noting that the plaintiff does not qualify for shoes per policy (doc. 21-3 at 1) or "medication" (doc. 21-3 at 2).

2

In their motion for summary judgment, the defendants contend that the plaintiff's case is barred by res judicata and his failure to exhaust administrative remedies. They also deny that they were indifferent to the plaintiff's medical needs and are protected from liability by qualified immunity. Appended to the motion are various exhibits, including the affidavit of Nurse Fleischmann (doc. 31-3); the affidavit of Nurse Mauney (doc. 31-4); medical summaries of the plaintiff's treatment in SCDC (doc. 31-5); handwritten prescription notes (doc. 31-6); copies of documents from the plaintiff's previous cases (doc. 31- 7 through 11); copies of the plaintiff's grievances (doc. 31-12); and a copy of SCDC Policy No. 4000.19 (Jan. 17, 2012), on shoes and shoe inserts (doc. 31-13).

The plaintiff responded to the defendants' motion for summary judgment, repeating that he continues to suffer pain and that he is not receiving appropriate treatment. Attached to the plaintiff's response are a letter dated June 20, 2014, from Doris Jacques, Regional Nurse Manager for SCDC Health Services, apprising the plaintiff that his foot injury was "well healed" and did not qualify the plaintiff for special shoes (doc. 40-2 at 1); a copy of a prescription dated February 14, 2011, approving the plaintiff for special shoes (doc. 40-3 at 1); and a letter from the plaintiff to this court indicating that the plaintiff had receive shoes in the past and should receive them now (doc. 40-4 at 1).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining

3

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### Res Judicata

The defendants contend this case is barred by the doctrine of res judicata because of the plaintiff's prior case against Nurse Mauney and other SCDC employees. In *Antrell Jermaine Fordham v. Dr. Moore; Mrs. L. Mauney; and Mrs. E. Holcomb*, Civil Action No. 2:12-974-MGL-BHH, the plaintiff brought a civil rights action alleging deliberate indifference to his serious medical needs because of the denial of Neurontin for pain and the denial of special shoes. On January 28, 2013, summary judgment was granted to the defendants. *See Fordham v. Moore*, Civil Action No. 2:12-974-MGL, 2013 WL 314476

4

(D.S.C. Jan. 28, 2013).  On April 30, 2013, the United States Court of Appeals for the Fourth Circuit affirmed the decision of this district court.  *Fordham v. Moore*, No. 13-6172, 520 F. App'x 192 (4th Cir. April 30, 2013).

    Res judicata bars litigation of all claims or defenses that were available to the parties in the previous litigation, regardless of whether they were asserted or determined in the prior proceeding.  *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes."), and *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) ("The preclusive affect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for '[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'").  The elements required for res judicata to apply are: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1473 (4th Cir. 1996).  "Generally, claims are part of the same cause of action when they arise out of the same transaction or series of transactions . . . or the same core of operative facts."  *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996) (internal citations omitted).

    To the extent the plaintiff's claims here pre-date the judgment of his prior case, they are barred.  While he makes claims for different medications now, he had the opportunity to seek such relief in  Civil Action No. 2:12-974-MGL-BHH.  These issues were decided adversely to the plaintiff there.  As such, the doctrine of res judicata bars the plaintiff's claims prior to January 28, 2013, the date on which Civil Action No. 2:12-974-MGL-BHH was decided.  *See Long v. Ozmint*, 558 F. Supp. 2d 624, 629 (D.S.C.

2008) ("'The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient.'").

### Exhaustion of Administrative Remedies

Although the doctrine of res judicata does not bar the plaintiff's claims after January 28, 2013, the plaintiff has not properly exhausted his prison remedies as to those claims. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006). As the Supreme Court has noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89–90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12. *See Malik v. Ward*, 8:08-cv-1886-RBH, 2010 WL 936777, at *2 n. 4 (D.S.C. Mar. 16, 2010). The policy is summarized as follows:

6

> After an unsuccessful attempt at informal resolution of the problem(s) by submission of a Request to Staff Member Form or by discussion of the complaint with the appropriate supervisor/staff, (1) an inmate must fill out a Form 10–5, Step 1, and give the form to an employee designated by the Warden (not the Inmate Grievance Coordinator) within fifteen days of the alleged incident; (2) the grievance must then be numbered and entered into SCDC's automated system within ten working days, and the Institutional Inmate Grievance Coordinator (IGC) notified; (3) the IGC must then, within ten working days, finalize the grievance in the system and attempt to informally resolve the issue; if the problem cannot be resolved informally, the IGC will conduct a complete investigation and make recommendations for disposition of the matter to the Warden; (4) the Warden must respond to the inmate, in writing, within forty days from the date the grievance was formally entered into the system by the IGC, then the IGC has five working days to serve the Step 1 response to the inmate; (5) the inmate may then appeal the Warden's response to the Division Director of Operations by completing a Form 10–5a, Step 2, and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (6) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal within another five "calendar days" and the Branch must present the Step 2 appeal to the responsible SCDC official, i.e. the Division Director of Operations, for a response; (7) the Division Director of Operations then has sixty days from the date the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (8) the IGC has five days to serve the inmate with the Step 2 response.

*McFadden v. Reynolds*, C.A. No. 3:13-439-JMC-JRM, 2013 WL 1838656, at *3 n. 2 (D.S.C. April 11, 2013) (citing SCDC, Inmate Grievance System, GA–01.12, § 13.4 (Oct. 1, 2010)), *adopted by* 2013 WL 1838644 (D.S.C. May 1, 2013).

The defendants' exhibits indicate that the plaintiff on February 25, 2013, filed a step 1 grievance (NO. LCI-0311-13) seeking special shoes (doc. 31-12 at 1–2). The grievance was denied on April 25, 2013 (*id.*). Although the plaintiff indicated that he wished to appeal (*id.*), the plaintiff never perfected his step 2 appeal by filing the step 2 paperwork. Moreover, although the defendants' exhibits also show that the plaintiff filed a step 2 appeal of a prior step 1 grievance (doc. 31-12 at 3–6 [No. LCI-0398-12]), Grievance No.

LCI-0398-12 pertains to the period encompassed by the plaintiff's prior civil rights action, *Fordham v. Moore, et al.*, Civil Action No. 2:12-974-MGL-BHH. As earlier stated, inquiries relating to that time period are barred by the doctrine of res judicata.

### Deliberate Indifference to Medical Needs

The plaintiff's claims also fail on the merits. The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs. Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). With regard to the objective component, a medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Plaintiffs must also show the subjective component-deliberate indifference. An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed

by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence or malpractice does not violate the Eighth Amendment. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

In determining whether a prison official is deliberately indifferent to a prisoner's serious medical needs, the court may generally rely on medical records concerning examination and treatment of the prisoner. *Bennett v. Reed*, 534 F.Supp. 83, 87 (E.D. N.C. 1981). *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.")

The plaintiff's allegations and the defendants' exhibits indicate that SCDC has continued to provide treatment for the plaintiff's foot after his prior case was dismissed. The plaintiff's Medication Administration Records indicate that the plaintiff was prescribed the pain medication Salsalate from January through July of 2013, Chlorpromazine (Thorazine), Fluoxetine, Ibuprofen, and acetaminophen (doc. 31-6 at 17–24). He was also prescribed Prozac for psychological issues (*id*. at 21). Those records also indicate that the plaintiff on May 9, 2013, elected not to continue taking Chlorpromazine, but continued to take all other medications  (*id*. at 26). In the summer of 2013, the plaintiff was prescribed Lidocain in viscous form and Colace (*id*. at 26). The records indicate that the plaintiff restarted his Chlorpromazine on August 1, 2013 (*id*. at 28). Also, in September of 2013, the plaintiff was prescribed Hydrocerin cream and the medication Mobic (*id*. at 30). The records also reflect administration of the Claritin and Visine A from October 2013 into February 2014 (*id*. at 33); Loratadine, Meloxicam, and ELTA TAR (a cream) from November 2013 into January 2014

9

(*id*. at 34); "Geedon" from December 2013 to June 2014 (*id*. at 35–36); Naproxen from February 20, 2014, to March 2, 2014 (*id*. at 38); and selenium sulfide from March 14, 2014, to June 11, 2014 (*id*. at 40). The plaintiff's Medication Administration Records reveal that the SCDC was treating and prescribing numerous medications to the plaintiff for a variety of ailments, including foot pain, pain resulting from hernia surgery, bipolar disorder, dandruff, eye problems, and constipation.

The plaintiff's medical treatment notes reflect medical treatment for the plaintiff's "dry eyes" on May 22, 2013 (doc. 31-5 at 22); medication for foot pain on May 22, 2013 (*id*.); mental health treatment and "anger management" in April, May, June, and August 2013 (*id*. at 22–24); treatment for foot pain and groin pain (resulting from hernia surgery) on August 7, 2013 (*id*. at 25), August 22, 2013 (*id*. at 26), and September 13, 2013 (*id*. at 27); treatment for pain in testicles on September 19, 2013, and on October 30, 2013 (*id*. at 27, 29); the prescribing of Mobic for foot pain on October 24, 2013 (*id*. at 28); the refill of ELTA TAR on November 15, 2013, for left foot pain (*id*. at 30); the increase in the prescription strength of Mobic from 7.5 milligrams to 15 milligrams on November 7, 2013 (*id*.); the diagnosis of hallux valgus and hammertoes on November 16, 2013 (*id*. at 31); the prescription of Naproxen on February 20, 2014, for the plaintiff's foot pain (*id*. at 36); and sick call treatment on March 19, 2014, and on March 31, 2014 (*id*. at 37–38).

The plaintiff's foot was x-rayed on July 25, 2013, revealing thickened soft tissues but "otherwise unremarkable" results. Another x-ray on November 13, 2013, showed hammertoe and mild hallux vulgus, but was an "otherwise normal study." (*id*. at 41). Furthermore, the plaintiff's treatment notes for May 22, 2013 (doc. 31-5 at 22), and December 13, 2013 (*id*. at 33), indicate that the plaintiff ambulated without difficulty.

While the plaintiff has certainly received medical care from SCDC, the record reveals that neither Nurse Mauney nor Nurse Fleischmann were providing care for the plaintiff after January 28, 2013. Nurse Mauney's relevant involvement was limited to responding to three Requests to Staff forms from the plaintiff, in which she advised him to sign up for sick call and to follow the advice of his treating physician Dr. Byrne and another provider, Nurse Practitioner Holcomb (doc. 31-4 at 2–3). Similarly, Nurse Fleischmann never directly treated the plaintiff, but "signed off" on the findings of the plaintiff's treating nurses and Nurse Practitioner Holcomb (doc. 31-3 at 2–3), and updated the plaintiff's "MAR" reports.

Nurse Mauney and Nurse Fleischmann cannot be held responsible here for the actions of other medical personnel involved in the plaintiff's treatment. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); and *Vinnedge v. Gibbs*, 550 F.2d 926, 927–29 (4th Cir. 1977). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (rejecting an argument that government officials can be held liable because they merely had knowledge of or acquiesced in a subordinate's misconduct). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Here, the plaintiff has not alleged facts that would impose supervisory liability on the defendants.

11

Based upon the foregoing, summary judgment should be granted on the plaintiff's claim for deliberate indifference to his serious medical needs.

### Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, the evidence indicates that Nurse Mauney and Nurse Fleischmann were not deliberately indifferent to the plaintiff's serious medical needs. As a result, there was no deprivation of a constitutional right in the above-captioned case. Therefore, the undersigned finds defendants Fleischmann and Mauney are entitled to qualified immunity. *See Carroll v. Carman*, 135 S.Ct. 348, 349–52 (2014) (*per curiam*); and *Tolan v. Cotton*, 134 S.Ct. at 1865.

12

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the District Court grant the defendants' motion

for summary judgment (doc. 31) and deny the plaintiff's motion for summary judgment (doc.

21).  The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

December 9, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

       The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

       Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

       **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).